ARACELIS VECHINI WIDOW OF VÉLEZ, Appellant, v. THE REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. 1369.   Decided December 19, 1961.

*C. Domínguez y Rubio* for appellant.  The registrar appeared by brief.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Rigau.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In order to secure a $5,000 loan, interest at 7 per cent annually, and the sum of $350 for expenses, costs, and attorney's fees, the spouses Pablo Morales and Irene Pabón constituted a first mortgage on a certain property owned by them in favor of Aracelis Vechini widow of Vélez. The mortgaged property was valued by the parties at $6,000.

The mortgagee instituted a summary foreclosure proceeding for nonpayment of certain items of interest in the Superior Court, Guayama Part. Proper demand having been made without the debtors having paid the sums due, the sale at public auction of the mortgaged real property was ordered for the minimum price of $6,000.

The first sale having been set, the same was not held because no bidders appeared.  A second sale was set for two thirds of the price at which the mortgaged property had been valued.  No bidders having appeared at this sale, the marshal adjudicated the property to the foreclosing party for the $4,000 offer which she made.

The marshal executed the corresponding deed of judicial sale of the said real property for the sum of $4,000, to be credited to the claimant's credit.  The Registrar of Property

of Guayama refused the registration of that deed by means of the following note:

"Record of this document is hereby denied at folio 249, volume 35 of Salinas, property No. 1193, in duplicate, Notice A, on the ground that since the foreclosure of the mortgage is made summarily, the mortgaged property object of the foreclosure and sale could not be adjudicated to Aracelis Vechini, the foreclosing party, at the second sale held on September 4, 1956 because no bidders appeared at such sale as well as at the first sale set for July 30, 1956 and which could not be held because no bidders appeared; and there not having appeared any bidders, there could be no award nor adjudication to the foreclosing party at the said second sale for the minimum price of two thirds of the value of the property, and because the undersigned is of the opinion that the adjudication to the foreclosing party could only be made at a third sale for the amount of the preferred credits, pursuant to § 127 of the Mortgage Law, a cautionary notice having been entered instead for the legal term of 120 days in favor of the foreclosing party and adjudicatee at the sale, Aracelis Vechini widow of Vélez. The only encumbrance on such property is the mortgage object of the foreclosure."

The grounds of the preceding decision are erroneous. The registrar maintains that (1) art. 172 of the Regulations of the Mortgage Law is in full force; (2) that the two-thirds does not constitute the unalterable or compulsory price or value, and that when the valuation is less than the preferred credits the amount of these preferred credits is the minimum admissible basis and the valuation becomes such price or value only when it exceeds the former, and that since there were no other creditors the foreclosing party's credit was a preferred credit, and (3) that since the foreclosing party's preferred credit of $5,554.17 is greater than $4,000, which is two thirds of the appraised valuation, the minimum admissible rate at the sale was the said $5,554.17 and not $4,000, and much less as credit to the foreclosing party's credit.

■ "Before 1893 a mortgage creditor had no necessity of making a previous assessment or valuation of the property in the deed. Section 127 of the Mortgage Law of 1893, however, provided for such an assessment and Section 175 of the Regulations offered a manner in which to cure such an omission as to mortgages executed prior to such statute if they were to be summarily foreclosed. Then came the Act of March 9, 1905, providing for the mode in which to obtain the satisfaction of judgments. From 1905 until 1931 it became unnecessary for secured creditors and debtors to agree in the mortgage deed or thereafter upon a price to be fixed to the mortgaged property. In 1931, the Legislature approved Act No. 69 of 1931 (Laws, p. 442) which reenacted Section 127 of the Mortgage Law in the sense that it required mortgage deeds once more to recite the valuation to be given to the premises upon the first foreclosure sale and amended it in that it required more than one auction sale." (*Cotto* v. *District Court*, 52 P.R.R. 550, 551.)

Article 127 *supra* of the Mortgage Law (30 L.P.R.A. § 223), as re-enacted and amended by Act No. 69 of May 2, 1931 (Sess. Laws, p. 432), provides:

"§ 223. Mortgage to state value of estate; valuation at public sales.

"The mortgage deed shall state the value at which the contracting parties appraise the estate, in order that it may serve as a basis for the first public sale which may be made, in the event that, the term of the loan having expired, the registry of the property does not show the payment of said loan.

"Should the first public sale fail to produce an award or adjudication, two-thirds of the value at which the contracting parties appraise the estate shall serve as a basis for the second public sale, but when said two-thirds part do not exceed the amount of preferred liabilities, such amount shall be the minimum limit of admissible bids.

"Should there be no award or adjudication at the second public sale, the basis for such other sales as may be held shall be the total amount of the preferred credits."

■ It is crystal-clear that by virtue of the provisions of this article, art. 172 of the Regulations of the Mortgage Law ceased to be in force in its last three paragraphs, as correctly stated by Professor Muñoz Morales.[1] The last four paragraphs of art. 172 *supra*, which for greater clearity we will enumerate from 6 to 9, provide:

6. "The sale shall be held in the manner prescribed for execution proceedings; but when two-thirds of the upset price fixed in the notices should not exceed the amount of the preferred obligations, the amount of the latter shall constitute the minimum bid admissible.

7. "If there should be no bidder at the first sale, the execution creditor may demand that the property be awarded to him at the upset price, according to the preceding paragraph, he assuming all prior liens and depositing with the court any surplus after his claim shall have been covered. This surplus shall be turned over to the proper person, the judge depositing it subject to his order in the public institution authorized to receive the same, if not delivered within 10 days after its deposit with the court.

8. "If the execution creditor should not apply for the award of the property to himself, he may request that the mortgaged property be again offered for sale, with a reduction of 25 per cent in the upset price fixed in the first sale, provided such reduction protects prior claims. For this purpose the plaintiff must present a new certificate issued by the registrar to the effect that this mortgage has not been canceled, if the proceedings shall have been suspended for more than six months. This sale shall be held in the same form as the first sale, bids being admissible which cover two-thirds of the reduced upset price, provided they cover the credits which have preference over those of the plaintiff. The plaintiff may also request the award, under the conditions mentioned, if the second auction is totally or partially without result.

9. "If the second auction should not result in either a sale or award in payment, other auctions may be held on the petition of the plaintiff, who shall, in a proper case, comply with the requirement mentioned in the preceding paragraphs, the upset

---

[1] 2 Luis Muñoz Morales, *Lecciones de Derecho Hipotecario* 178.

price thereat being equivalent to the preferred claims. In such a case the award for said price may also be requested [by the plaintiff], with the obligation of meeting the charges when they mature, he being subrogated in the place of the debtor with regard thereto." (30 L.P.R.A., pp. 110, 111.)

█ The manner of holding the sale is not governed by these provisions. According to them, it shall be held in the manner prescribed for foreclosure proceedings, which was regulated by the old Law of Civil Procedure and according to which no bids could be made at the sale which did not cover two thirds of the valuation. On the contrary, art. 127 of the Mortgage Law provides that the basis for the first sale shall be the value fixed by the contracting parties, and for the second sale the basis shall be two thirds of such value.

It will be noted that in this case the rules established in art. 127 of the Mortgage Law were followed to the letter. At the first auction which was not held because no bidders appeared, the basis was the value at which the contracting parties appraised the property, or $6,000. In the second auction, which resulted in a sale and adjudication, the basis was two thirds of the valuation, or $4,000, the property having been adjudicated to the mortgagee for that amount.

However, the registrar maintains the following:

"Considering that art. 172 of the Mortgage Regulations is in full force, we wish to explain at this time to the judges our interpretation of the scope of that provision in rendering our note of refusal object of this appeal.

"There is identity between the paragraphs of the articles relied on, namely, art. 127 of the M. L. and art. 172 of the Regulations:

"'Art. 127 (2). Should the first public sale fail to produce an award or adjudication, two-thirds of the value at which the contracting parties appraise the estate shall serve as a basis for the second public sale, *but when said two-thirds part do not exceed the amount of preferred liabilities, such amount shall be the minimum limit of admissible bids.'*

"'Art. 172 Reg. (3). When the preferred obligations exceed such valuation, the total amount thereof shall be the minimum sum acceptable at the sale.'

"Further on, in paragraph 6 it is repeated as follows:

"'. . . but when two-thirds of the upset price fixed in the notices should not exceed the amount of the preferred obligations, *the amount of the latter shall constitute the minimum bid admissible.*'

"It may be observed that the transcribed paragraphs of the Mortgage Regulations read 'such amount' and 'the amount', referring to the amount of the preferred liabilities. Since in the case at bar there are no other preferred liabilities having preference over the foreclosed credit, the only preferred credit is that of the foreclosing creditor amounting to $5,554.17, covering principal, interest, costs, and attorney's fees. (*Malaret et al. v. Sobrinos de Ezquiaga,* 14 P.R.R. 653-57.)

"And although art. 127 *supra* of the M. L. expresses the same as the transcribed paragraphs of art. 172 of its Regulations, it is to be noted that the former refers to the second sale while the latter refers to the first one. This is evident, since in paragraph 7 of art. 172 it is said:

"'If there should be no bidder at the first sale, the execution creditor may demand that the property be awarded to him at the upset price, according to the preceding paragraph, he assuming all prior liens and depositing with the court any surplus after his claim shall have been covered . . .'

"According to the rule in this paragraph, the foreclosing creditor could have demanded that the property be adjudicated to her at the *second auction* 'at the upset price, according to the preceding paragraph.' Which would have been that upset price? According to paragraph 6 of art. 172 of the M. R. which refers to the first sale, such 'upset price' was the amount of the preferred obligation, that is, the amount of the foreclosed credit because there were no others (14 P.R.R. 653-57, *supra*), or $5,554.17, and not the two thirds taken, or $4,000." (Registrar's Brief, pp. 3 and 4.)

The registrar's theory is based on an erroneous premise, perhaps confused by the *dictum* in the case of *Malaret et al.* v. *Sobrinos de Ezquiaga, supra,* to the effect that

when there are no other preferred liens the credit of the foreclosing creditor is the only preferred credit. Preferred liens are those which have preference over that of the execution creditor. If there are none, no mention can be made of preferred liens or credits. "Preferred" means that it is preferred, and "to prefer" *to give* preference. "*Preference,*" according to the Dictionary of the Royal Academy (p. 1059), means, among other connotations, "priority, advantage, or majority which a person or thing has over another, whether in the value or in deservingness." Furthermore, although art. 172 of the Regulations of the Mortgage Law is not in force at present, it clarifies the doubts as to the preferred credits to which the law makes reference. The said article provides that the second sale shall be held in the same form as the first sale, "bids being admissible which cover two-thirds of the reduced upset price, *provided they cover the credits which have preference over those of the plaintiff.*" Article 128 of the Mortgage Law also makes reference to the preferred *credits*, although it does not call them by their names. The said article provides in part that if the estate be sold on the petition of a second or subsequent mortgage creditor or of ordinary creditors, the sale shall be declared void if an offer shall not be made of an amount sufficient to pay *all prior recorded credits,*" as well as the unpaid interest thereon appearing in the register. There is no question that these credits have preference over the claimant's credit. Article 173 of the Regulations makes provision in the event any auction shall have been held at which bids equal *to the credits having preference over that of the claimant* were admissible and the property is not sold.

"The words 'prior encumbrances or liens and those having preference, if any,' says Morell at p. 125 of vol. 7, are clear in our opinion. The word prior, according to a commentator, refers to the encumbrances having preference, he says, over the liens. We believe that the word prior clearly refers to

216

encumbrances or liens, and that the same is true as to the word preferred. The law intends that every *preferred right of the claimant* be respected, either because of its nature, its date, the recordation date, agreement between the interested parties, and is based on a recordation or on a notice." See, also, 3 Barrachina, *Derecho Hipotecario y Notarial* 170; Muñoz, *op. cit.* at 225–30.

On the other hand, the registrar's theory amounts to rendering ineffective the clear provisions of art. 127 of the Mortgage Law. The form of the auction as well as the sale and adjudication made in this case having complied with the provisions of this article, the decision appealed from will be reversed.